UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| GWENELDA CHRISTOPHER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 4:15 CV 1392 JMB |
| ) | |
| CAROLYN W. COLVIN, ) | |
| Acting Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM AND ORDER**[1]

Gwenelda Christopher ("Plaintiff") appeals the decision of the Commissioner of Social Security ("Defendant") denying her applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act. See 42 U.S.C. § 401 *et seq*. Because Defendant's decision is supported by substantial evidence and correctly applies the governing law, as discussed below, it is affirmed. See 42 U.S.C. § 405(g).

**I.  Background**

Plaintiff is a fifty-four year-old woman who claims that she became disabled on July 9, 2012, due to several disorders, including fibromyalgia, degenerative disc disease, protruding discs in her lower back, high blood pressure, hypothyroidism, sleep apnea, obesity, mitro-valve prolapse, and paralysis of her diaphragm on the right side. (Tr. 198, 238) Plaintiff has prior work experience as a caseworker for the Missouri Division of Family Services. (Tr. 233)

Plaintiff applied for disability benefits on July 17, 2012. Her initial claim was denied on October 3, 2012. (Tr. 99) Thereafter, Plaintiff requested a hearing before an administrative law judge ("ALJ") to contest the denial. (Tr. 111-12) On February 27, 2014, the ALJ held a hearing

---

[1] The parties have consented to the Court's jurisdiction pursuant to 28 U.S.C. § 636(c).

at which Plaintiff appeared (with counsel) and testified, along with a vocational expert ("VE"). (Tr. 33-76) On April 7, 2014, the ALJ issued a decision, finding that Plaintiff was not disabled. (Tr. 15-27) On May 7, 2014, Plaintiff petitioned for review of the ALJ's decision. (Tr. 8-9) The Appeals Council denied review on July 10, 2015. (Tr. 1-6) The decision of the ALJ is therefore final and the case is ready for disposition in this Court. See 42 U.S.C. § 405(g).

In arriving at her decision, the ALJ followed the required five step inquiry. At step one, the ALJ concluded that Plaintiff had not engaged in substantial gainful activity since July 9, 2012. At step two, the ALJ found Plaintiff had the following severe impairments: obesity, degenerative disc disease, and fibromyalgia.[2] At step three, the ALJ held Plaintiff's impairments did not rise to the level of a Listing. See 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 17, 19)

Before arriving at step four, the ALJ reviewed the entire record and concluded that Plaintiff retained the residual functional capacity ("RFC") to:

> perform a range of work as defined in 20 CFR 404.1567 except she can frequently lift and carry 10 pounds; she can occasionally lift and carry 20 pounds; she can stand or walk for approximately 2 hours out of an 8-hour day; she can sit for up to approximately 6 hours out of an 8-hour day; she can sit for 2 hours at one time and then she needs to stand or walk around no more than 5 minutes, provided that she is not off task more than 10 percent; she can occasionally push or pull or operate foot controls with bilateral lower extremities; she can occasionally climb ramps and stairs; she cannot climb ladders, ropes, and scaffolds; she can occasionally balance; she occasionally can stoop, kneel, crouch, or crawl; she

---

[2] The ALJ found the following impairments non-severe: benign essential hypertension, mitral valve prolapse, asthma, gastroesophageal reflux disease, sleep apnea, diabetes, coronary artery disease, degenerative joint disease in her right hand, carpal tunnel syndrome and osteoarthritis. Plaintiff does not contest these findings. The ALJ also found Plaintiff's depression non-severe. (Tr. 18) In making this latter determination, the ALJ applied the "special technique" set out in 20 C.F.R. § 404.1520a, which requires the ALJ to consider four broad areas of functioning: (1) the activities of daily living; (2) social functioning; (3) concentration, persistence, or pace; and (4) episodes of decompensation. A mental impairment is not severe if it causes no more than mild limitations in the first three categories, and none in the fourth. The ALJ found that Plaintiff had mild limitations in areas (1) and (3), and no limitations in (2) and (4). Those findings required the ALJ to find that Plaintiff's alleged depression was non-severe. See 20 C.F.R. § 404.1520a(d)(1).

must avoid concentrated exposure to extreme heat and humidity; and she must avoid workplace hazards, which is defined as unshielded moving machinery and unprotected heights.

(Tr. 20)

In making this RFC determination, the ALJ made several credibility findings and analyzed several pieces of opinion evidence. First, the ALJ found that Plaintiff's statements concerning the intensity, persistence, and limiting effects of her impairments were "not credible." (Tr. 21) In substance, Plaintiff's testimony asserted disabling levels of symptomatology, such as a constant need to lie down, constant "hot burning pain" in her back, and the inability to do her past work because her fibromyalgia medications impair her concentration. (Tr. 40-46) Plaintiff also testified that her depression symptoms were "so bad" that it would be "merciful" if her boyfriend would "just shoot [her]." (Tr. 50) The ALJ found these assertions to be "not credible." (Tr. 21)

As to the opinion evidence, the ALJ discounted the opinion of Dr. Linda Hunt, M.D. (Tr. 23) Plaintiff saw Dr. Hunt for treatment of her fibromyalgia on one occasion, and submitted a medical source statement and a fibromyalgia questionnaire that asserted Plaintiff had disabling limitations. (Id.) On the other hand, the ALJ gave "significant weight" to two state agency medical consultants who reviewed Plaintiff's medical records: Dr. Rebecca Wotherspoon, M.D. (whose opinion generally tracked the findings of the ALJ's RFC) and Dr. John Pataki, M.D. (who opined that Plaintiff could work at the Sedentary level and opined that Plaintiff's depression was non-severe). (Id.)

After determining Plaintiff's RFC, the ALJ asked the vocational expert ("VE") whether someone with those limitations could perform their past work, and the VE testified affirmatively. (Tr. 71) At step four, therefore, the ALJ found that Plaintiff is capable of performing all of her

relevant past work. (Tr. 24) This includes work as an administrative clerk, supervisor, survey worker and caseworker. (Tr. 25) The ALJ then made an alternative finding at step five. Based on the VE's testimony, the ALJ found that Plaintiff is capable of performing other jobs in the national economy, including work as a general clerk, a file clerk, and a route delivery clerk. (Tr. 26) Therefore, the ALJ found that Plaintiff was not disabled under the law. (Id.)

As noted above, after the ALJ's ruling, Plaintiff sought review in the Appeals Council, and submitted arguments in support of the appeal. (Tr. 7-11) The Appeals Council considered Plaintiff's legal brief, but found that it did not provide a basis to review the ALJ's decision. (Tr. 1-6) Plaintiff then appealed to this Court, urging reversal of the ALS's decision.[3]

## II. Standard of Review and Legal Framework

"To be eligible for [disability] benefits, [Plaintiff] must prove that [she] is disabled… ." Baker v. Sec'y of Health and Human Servs., 955 F.2d 552, 555 (8th Cir. 1992); see also Pearsall v. Massanari, 274 F.3d 1211, 1217 (8th Cir. 2001). A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A) and 1382c(a)(3)(A). A claimant will be found to have a disability "only if his physical or mental impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423 (d)(2)(A) and 1382c(a)(3)(B); see also Bowen v. Yuckert, 482 U.S. 137, 140 (1987).

---

[3] Additional factual background will be integrated into the discussion below, as necessary. The Court has reviewed the entire administrative record in this matter.

Per regulations promulgated by the Commissioner, the ALJ follows a five-step process in determining whether a claimant is disabled. "During the process the ALJ must determine: '1) whether the claimant is currently employed; 2) whether the claimant is severely impaired; 3) whether the impairment is, or is comparable to, a listed impairment; 4) whether the claimant can perform past relevant work; and if not 5) whether the claimant can perform any other kind of work.'" Andrews v. Colvin, 791 F.3d 923, 928 (8th Cir. 2015) (quoting Hacker v. Barnhart, 459 F.3d 934, 936 (8th Cir. 2006)). "If, at any point in the five-step process the claimant fails to meet the criteria, the claimant is determined not to be disabled and the process ends." Id. (citing Goff v. Barnhart, 421 F.3d 785, 790 (8th Cir. 2005)); see also Martise v. Astrue, 641 F.3d 909, 921 (8th Cir. 2011).

The Eight Circuit has repeatedly emphasized that a district court's review of an ALJ's disability determination is intended to be narrow and that courts should "defer heavily to the findings and conclusions of the Social Security Administration." Hurd v. Astrue, 621 F.3d 734, 738 (8th Cir. 2010) (quoting Howard v. Massanari, 255 F.3d 577, 581 (8th Cir. 2001)). The ALJ's findings should be affirmed if they are supported by "substantial evidence" on the record as a whole. See Finch v. Astrue, 547 F.3d 933, 935 (8th Cir. 2008). Substantial evidence is "less than a preponderance, but enough that a reasonable mind might accept it as adequate to support a decision." Juszczyk v. Astrue, 542 F.3d 626, 631 (8th Cir.2008).

Despite this deferential stance, a district court's review must be "more than an examination of the record for the existence of substantial evidence in support of the Commissioner's decision." Beckley v. Apfel, 152 F.3d 1056, 1059 (8th Cir. 1998). The district court must "also take into account whatever in the record fairly detracts from that decision." Id.

Specifically, in reviewing the Commissioner's decision, a district court is required to examine the entire administrative record and consider:

1. The credibility findings made by the ALJ;
2. Plaintiff's vocational factors;
3. The medical evidence from treating and consulting physicians;
4. Plaintiff's subjective complaints relating to exertional and non-exertional activities and impairments;
5. Any corroboration by third parties of Plaintiff's impairments;
6. The testimony of vocational experts when required, including any hypothetical questions setting forth Plaintiff's impairments.

Stewart v. Sec'y of Health & Human Servs., 957 F.2d 581, 585-86 (8th Cir. 1992).

Finally, a reviewing court should not disturb the ALJ's decision unless it falls outside the available "zone of choice" defined by the evidence of record. Buckner v. Astrue, 646 F.3d 549, 556 (8th Cir. 2011). A decision does not fall outsize that zone simply because this Court might have reached a different conclusion had it been the original finder of fact. See also McNamara v. Astrue, 590 F.3d 607, 610 (8th Cir. 2010) (explaining that if substantial evidence supports the Commissioner's decision, the court "may not reverse, even if inconsistent conclusion may be drawn from the evidence, and [the court] may have reached a different outcome.").

## III.  Discussion

Before this Court, Plaintiff argues that the ALJ erred:  (1) by not finding her depression to be a severe impairment; (2) by not including "further mental limitations" in her RFC; and (3) by failing to provide "a proper credibility analysis."  (ECF No. 13 at 7)  These issues are interrelated.  For example, the ALJ's decision to discount Plaintiff's credibility influenced the ALJ's treatment of Plaintiff's mental impairments, because Plaintiff's testimony was the majority of the evidence supporting Plaintiff's mental limitations.  Therefore, the Court will first address the ALJ's credibility finding, and then address Plaintiff's other arguments.

## A. Credibility Analysis

As noted above, the ALJ discounted Plaintiff's statements concerning the intensity, persistence, and limiting effects of her impairment. (Tr. 21) Plaintiff has three main issues with the ALJ's credibility analysis. First, she argues that the ALJ placed improper weight on her daily activities—that activities that Plaintiff admitted doing, such as cooking and cleaning, as well as her hobbies, do not demonstrate a lack of disability. Second, she maintains that the ALJ did not adequately consider her work history (which demonstrates a long history of working). Plaintiff argues that this history "indicate[s] that [Plaintiff] is someone who would work if she could." (ECF No. 13 at 13) Third, Plaintiff argues that the ALJ did not properly take into account the side effects of her medications, which, she argues, cause confusion and fatigue, and limit her concentration, persistence, or pace. (ECF No. 13 at 13-14)

Defendant contends that Plaintiff's credibility was properly discounted because of insufficient medical evidence supporting her asserted degree of limitation; her daily activities were "inconsistent" with her subjective complaints; she did not seek or receive specialist treatment for her mental impairments; and Plaintiff's statements to her providers were inconsistent with her testimony before the ALJ. (ECF No. 17 at 12-13)

As a general matter, credibility determinations "are the province of the ALJ, and as long as 'good reasons and substantial evidence' support the ALJ's evaluation of credibility," the Court will defer to her decision. See Julin v. Colvin, 826 F.3d 1082, 1086 (8th Cir. 2016) (quoting Guilliams v. Barnhart, 393 F.3d 798, 801 (8th Cir. 2005)). Furthermore, an ALJ "may decline to credit a claimant's subjective complaints 'if the evidence as a whole is inconsistent with the claimant's testimony.'" Julin, 826 F.3d at 1086 (quoting Cox v. Barnhart, 471 F.3d 902, 907 (8th Cir. 2006)). In evaluating Plaintiff's credibility regarding the extent of her symptoms, the ALJ

must consider all of the evidence, including objective medical evidence, and evidence relating to the factors enumerated in Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984), including: (1) Plaintiff's daily activities; (2) the duration, frequency, and intensity of Plaintiff's pain; (3) precipitating and aggravating factors; (4) the dosage, effectiveness, and side effects of medication; and (5) Plaintiff's functional restrictions. See Julin, 826 F.3d at 1086; see also 20 C.F.R. § 416.929(c).

Here, the ALJ properly discounted Plaintiff's credibility. (Tr. 21) First, the ALJ specifically addressed the medical evidence, holding that it "does not substantiate the claimant's allegations about the intensity, persistence and functionally limiting effects of her symptoms." (Tr. 22) Substantial evidence supports this conclusion. For example, even though Plaintiff testified that she had disabling upper and lower back pain, along with pain in her feet, Plaintiff had normal shoulder and thoracic spine imaging. (Tr. 480) Also, nerve studies from August of 2013 showed no evidence of generalized peripheral neuropathy, undercutting her assertions of foot pain. (Tr. 483, 576) The ALJ also noted that Plaintiff never presented to medical providers in acute distress. (Tr. 377, 403) Plaintiff also testified that she had difficulty walking, but the ALJ documented how Plaintiff was often observed walking with a normal gait at office visits. Likewise, many examinations revealed normal reflexes, full strength in her upper and lower extremities, and full range of motion. (Tr. 400, 474, 438, 621) Where objective medical evidence does not support the level of limitation claimed, that is a factor in discounting a plaintiff's credibility. See Ramirez v. Barnhart, 292 F.3d 576, 581 (8th Cir. 2002) (holding that objective medical evidence is one factor in discounting Plaintiff's assertions of disabling limitations); see also 20 C.F.R. §§ 404.1529, 416.929 ("Objective medical evidence []is a useful indicator to assist us in making reasonable conclusions about the intensity and persistence of

your symptoms and the effect those symptoms, such as pain, may have on your ability to work."). The medical evidence here supports the ALJ's decision to discount Plaintiff's credibility.

Next, the Court disagrees with Plaintiff's argument that the ALJ placed too much weight on Plaintiff's daily activities. The ALJ properly took those activities into account in assessing credibility. (Tr. 23) Plaintiff admitted to exercising with yoga, playing "Wii Fitness," and regularly walking on the treadmill for 15 to 30 minutes. (Tr. 23) Additionally, Plaintiff admitted to crocheting for an hour at a time, caring for a pet, and performing household chores as well as preparing meals, visiting grandchildren, attending church, and going to the store. (Tr. 253-60) Although Eighth Circuit cases sometimes send "mixed signals" concerning the relevance of a claimant's daily activities in credibility determinations, the daily activities admitted by Plaintiff are clearly in excess of other cases where the daily activities have undercut a plaintiff's credibility. See Clevenger v. Social Sec. Admin., 567 F.3d 971, 976 (8th Cir. 2009) (acknowledging that the Eighth Circuit has sent "mixed signals" concerning the importance of daily activities, but agreeing that the daily activities in that case—doing laundry, washing dishes, changing sheets, ironing, preparing meals, driving, attending church, and visiting friends and relatives—supported an ALJ's decision to discredit a plaintiff's assertions of disabling pain). The daily activities in this case are well in excess of those in Clevenger. See also Andrews v. Colvin, 791 F.3d 923, 929 (8th Cir. 2015) (permitting an ALJ to discount a fibromyalgia plaintiff's credibility in part based upon the claimant's daily activities, including the ability to cook, clean, drive, shop, and take care of personal grooming and hygiene). Plaintiff's daily activities are another factor supporting the ALJ's decision to discount Plaintiff's credibility.

Next, Plaintiff argues that the ALJ failed to take into account the side effects of her medications, as required under Polaski. This Court disagrees. As an initial matter, the ALJ did in fact consider this factor. (See Tr. 22) ("The undersigned gives full consideration to all of the evidence presented [including]… dosage, effectiveness, and side effects of medication.") The ALJ explicitly discussed Plaintiff's testimony regarding her medication side effects, including their purported impact on her ability to concentrate. (Tr. 20) But the ALJ discounted this testimony in part because, during office visits, Plaintiff denied any side effects from her medications. (Tr. 23, 622) Such inconsistent statements are a proper basis upon which to discount Plaintiff's credibility. See Raney v. Barnhart, 396 F.3d 1007, 1011 (8th Cir. 2005) (upholding an ALJ's discrediting of a claimant based, in part, upon inconsistent statements).[4]

Finally, as to Plaintiff's argument that the ALJ did not credit Plaintiff's work history, this does not require reversal. An ALJ "need not explicitly discuss each" factor touching upon credibility. Wildman, 596 F.3d at 968. It is enough that the ALJ *consider* factors such as work history. Here, the ALJ explicitly noted that she took into account Plaintiff's "prior work record." (Tr. 21) Furthermore, a good work history does not preclude an ALJ from discounting a claimant's credibility. See Schultz v. Astrue, 479 F.3d 979, 983 (8th Cir. 2007) (upholding an ALJ's discounting of claimant's credibility notwithstanding claimant's "good work history"). Given the entirety of the ALJ's credibility analysis—from assessing the objective medical evidence, to discussing Plaintiff's daily activities and her inconsistent statements—this one positive factor does not deprive the ALJ's decision of substantial evidence.

---

[4] Plaintiff made other inconsistent statements as well. For example, at her hearing, Plaintiff alleged that her depression symptoms were so severe that "[s]ometimes it's so bad that I tell [Plaintiff's boyfriend] it would be merciful if he'd just shoot me." (Tr. 50) Yet, to her doctors, Plaintiff has denied having mood issues or depression. (See Tr. 507, 533) (denying mood and depression issues).

In sum, the objective medical evidence does not support Plaintiff's assertions concerning the extent of her subjective limitations, and none of Plaintiff's other arguments for reversal deprive the ALJ's credibility determination of substantial evidence. For all of the above reasons, the ALJ gave numerous, specific reasons for discounting Plaintiffs credibility, and that determination is entitled to deference in this Court. Buckner, 646 F.3d at 558.

### B. Depression Finding

Christopher's next argument for reversal is that the ALJ erred in finding her depression non-severe. (ECF No. 13 at 8) An impairment is severe if it has more than a minimal impact on an individual's ability to do basic work activities. See 20 C.F.R. § 404.1521(a). On the other hand, an impairment "is not severe if it amounts to only a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities." Kirby v. Astrue, 500 F.3d 705, 707 (8th Cir. 2007). Although "severity is not an onerous requirement for the claimant to meet … it is also not a toothless standard. Id. at 707. Finally, "[i]t is [Plaintiff's] burden to establish that h[er] impairment or combination of impairments are severe." Id.

When it comes to a mental impairment, the ALJ uses the special technique set out in 20 C.F.R. § 404.1520a. Here, the ALJ considers Plaintiff's: (1) activities of daily living; (2) social functioning; (3) concentration, persistence, or pace; and (4) episodes of decompensation. See § 404.1520a(c)(3). A mental impairment is not severe if it results in no more than mild limitations in the first three areas and none in the fourth area. See § 404.1520a(d)(1). The ALJ concluded that Plaintiff had only mild limitations in the activities in activities of daily living, no limitations in social functioning, mild limitations in concentration, persistence or pace, and no episodes of decompensation. (Tr. 18-19)

-11-

The ALJ properly found that Plaintiff's depression was not a severe impairment. First, Plaintiff failed to allege depression as an impairment in her application. (See Tr. 238) (listing impairments upon which Plaintiff based her disability application, yet omitting depression). This omission is significant. See Dunahoo v. Apfel, 241 F.3d 1033, 1039 (8th Cir. 2001) (observing that a failure to allege depression in an application for benefits is significant, even if the evidence of depression was later developed). Furthermore, even at the administrative hearing, Plaintiff's attorney gave an opening statement articulating her theory of why Plaintiff was disabled, and limited those remarks to Plaintiffs physical conditions—she did not mention depression or any other mental impairment. (See Tr. 37-38) ("[I]n looking at this, the impairments, including fibromyalgia [and] degenerative disc disease with spondylosis, [would limit Plaintiff] to less than sedentary work. Or in the alternative, if she is capable of sedentary work, the side effects of her medications and the pain that she experiences would eliminate her ability to utilize transferable skills and Medical Vocational rule 201.06 would direct a finding in this case – a disability in this case.") Plaintiff only thoroughly articulated a theory of disability based upon depression after her administrative hearing. As a final and significant matter, the Court also notes that Plaintiff often denied mood issues to her doctors, and sometimes, specifically denied having depression. (See Tr. 507, 553) (denying mood issues, and denying depression).

Second, Plaintiff was not receiving any treatment for depression from a psychiatrist or other mental-health provider. This indicates that her alleged depression was not as serious as she now claims. See Jones v. Callahan, 122 F.3d 1148, 1153 (8th Cir. 1997) (holding substantial evidence supported ALJ's conclusion that the plaintiff did not have a severe mental impairment where the plaintiff was not undergoing regular mental health treatment, or taking psychiatric medications regularly, and where his daily activities were not restricted from emotional causes).

Third, substantial evidence supports the ALJ's "special technique" analysis, which found that Plaintiff's functioning was not sufficiently impaired to be severe. As the ALJ pointed out, Plaintiff had only mild limitations in the activities of daily living. This finding is supported by substantial evidence where Plaintiff exercised by doing yoga, playing Wii fitness, walking on the treadmill for 15 to 30 minutes, caring for a pet, and performing household chores. Cf. Buckner, 646 F.3d at 557 (holding that a claimant's daily activities, such as taking care of a son and girlfriend, as well as taking care of personal needs and grooming, watching television, and playing on the computer supported a finding of *no limitation* in activities of daily living). The finding that Plaintiff had no limitation in social functioning is supported by substantial evidence where Plaintiff lives with her boyfriend, visits grandchildren, attends church, goes to the grocery store, attends Sunday school, attends Bible studies, sends text messages daily and has friends over to her house regularly, and where Plaintiff did not allege shortcomings in social functioning in her Function Report. (See Tr. 258) (denying problems getting along with people). The finding that Plaintiff has only mild limitations in concentration, persistence or pace is also supported by substantial evidence where Plaintiff admits that she is able to crochet for up to an hour, where she responded to the hearing questions with clarity, and Plaintiff's function report fails to allege issues with understanding, completing tasks, or following instructions.[5] And finally, there were no episodes of decompensation. (Tr. 19) The ALJ's analysis under the special technique is supported by substantial evidence, and this finding directs a conclusion that Plaintiff's depression is not severe. See 20 C.F.R. § 404.1520a(d)(1).

Fourth, multiple pieces of opinion evidence support the ALJ's finding that Plaintiff's depression was not severe. For example, Dr. Stanley Hutson, Ph.D., opined that Christopher had

---

[5] Of course, in her Function Report, Plaintiff did allege concentration issues, but for the reasons discussed above, her credibility regarding those allegations was properly discounted.

-13-

no severe mental impairment. (Tr. 79-82) Dr. Thomas Van Hoose, Ph.D., also opined that Christopher had no severe mental impairment. (Tr. 478-79) The consistent findings of these two medical professionals provide substantial evidence to support the ALJ's decision. See Stormo v. Barnhart, 377 F.3d 801, 807 (8th Cir. 2004) (upholding an ALJ's RFC finding where it was supported by the findings of state agency physicians).

Although Dr. Rice diagnosed Christopher with depression, (Tr. 409), this evidence is not dispositive. For one thing, neither Dr. Rice nor Plaintiff discuss how any purported depression affects work-related abilities—a diagnosis of depression, in and of itself, does not indicate difficulties working. Cf. Buckner, 646 F.3d at 557 (upholding an ALJ's decision that plaintiff's depression was not severe—even though plaintiff's doctor officially diagnosed him with depression—because there was no evidence concerning how the depression limited plaintiff's work abilities) Additionally, Dr. Rice's notes indicate that Plaintiff's depression was "improving" with treatment. (Tr. 472) But most importantly, it is up to the ALJ to resolve discrepancies in the factual record. See Travis v. Astrue, 477 F.3d 1037, 1041 (8th Cir. 2007) ("It is the ALJ's duty to resolve conflicts in the evidence."). Here, substantial evidence supports the ALJ's decision, even though (giving Plaintiff every benefit of the doubt), there is some evidence that *might* point the other way.

Ultimately, the main evidence supporting Plaintiff's argument is Plaintiff's own testimony at the hearing. (See, e.g., Tr. 50-51) (describing depression symptoms as "so bad" that Plaintiff tells her boyfriend that "it would be merciful if he'd just shoot [her]"). As discussed above, however, the ALJ properly discounted Plaintiff's credibility, and this evidence— especially when compared to the contrary evidence that the ALJ marshalled—is not sufficient to meet Plaintiff's burden of proof. See Kirby v. Astrue, 500 F.3d 705, 708 (8th Cir. 2007)

(holding that, although "severity is not an onerous requirement for the claimant to meet … it is also not a toothless standard") (internal citations omitted).[6]

### C. **Additional Mental Limitations in the RFC**

Finally, Plaintiff argues for reversal because she alleges that the RFC finding is not supported by substantial evidence, in that it did not include any mental limitations, which Plaintiff argues it should have. Specifically, Plaintiff claims that the ALJ should have included additional non-exertional limitations, such as limitations in concentration, persistence or pace, which, she claims, is caused by her depression, fibromyalgia, and her medications.

As noted earlier, before proceeding to step four, the ALJ was required to analyze Plaintiff's Residual Functional Capacity ("RFC"). See 20 C.F.R. § 404.1520(a)(4). An RFC is defined as the most that an individual can do despite the combined effects of all of his or her credible limitations. Moore v. Astrue, 572 F.3d 520, 523 (8th Cir. 2009). In determining Plaintiff's RFC, the ALJ was required to consider all of the evidence in the record, including Plaintiff's testimony regarding symptoms and limitations, medical treatment records, and medical opinion evidence. Myers v. Colvin, 721 F.3d 521, 527 (8th Cir. 2013). In the end, however, it remains Plaintiff's burden to prove her RFC. See Stormo, 377 F.3d at 806.

In support of her assertion that the ALJ should have included additional concentration limitations, Plaintiff offers: (1) her own testimony in support of limitations; (2) Dr. Hunt's medical source statement in which she checked the box "yes" when asked whether Plaintiff's "pain, use of medications, or side effects of medication cause a decrease in concentration,

---

[6] Finally, this is not a case where the ALJ either ignored evidence of depression or specifically found that Plaintiff's depression was not an impairment at all. See Banks v. Colvin, 2016 WL 4396166 (E.D.Mo. August 18, 2016) (reversing a decision denying benefits where the ALJ specifically found that Plaintiff's alleged depression *was not an impairment* at all, despite numerous medical records demonstrating a history of depression and treatment for it). Instead, the ALJ here considered the depression evidence and found it to be non-severe.

persistence, or pace, *or any other limitations*"; and (3) generalized assertions that fibromyalgia patients suffer from these limitations. The Court will address each argument in turn.

First, Plaintiff's own testimony is not sufficient to meet her burden to prove additional RFC limitations, or to show that the ALJ's RFC determination is not supported by substantial evidence. Primarily, this is because her credibility was properly discounted, as discussed above.

As to Dr. Hunt's statement, this argument is unavailing. For one thing, as Defendant points out, it is not clear that, in checking "yes" on this box, Dr. Hunt was opining that Plaintiff had difficulties in concentration—she merely checked a box "yes" when asked whether one of several possible answers was correct. (Tr. 595) Furthermore, Dr. Hunt failed to elaborate upon her answer, even though she was asked to do so. Therefore, it is not clear whether Dr. Hunt's statement in fact supports Plaintiff's specific argument that she suffers from concentration difficulties. But even if it did, Dr. Hunt's opinion in this regard would be properly discounted, because she only saw Plaintiff one time, Johnson v. Chater, 87 F.3d 1015, 1018 (8th Cir. 1996) (discounting a doctor's opinion where the doctor only saw the plaintiff once), and because Dr. Hunt merely checked a box, instead of fully analyzing the question, and pointing to objective medical evidence in support of her conclusion. See Papesh v. Colvin, 786 F.3d 1126, 1133 (8th Cir. 2015) (discounting a doctor's opinion because it "is given in checklist format").

Furthermore, substantial medical evidence undermines Plaintiff's assertions of limitations in concentration. As Defendant points out, Plaintiff's mental status examinations were normal. (Tr. 412, 573) Plaintiff generally presented as alert and oriented at her appointments. (Tr. 412, 507) And Plaintiff also denied having any memory or concentration issues at multiple appointments. (Tr. 416, 437) Substantial evidence therefore supports the ALJ's RFC, and shows that Plaintiff has not met her burden to prove otherwise.

Finally, Plaintiff cites—as a general proposition—evidence that fibromyalgia may result in "fibro fog," and that "a common side effect" of her Cymbalta prescription is confusion. But as Defendant correctly points out, general allegations that fibromyalgia patients *in general* suffer from certain symptoms does not prove that *this Plaintiff* suffers from those limitations. It is Plaintiff's burden to prove that *she* suffers from work-limiting symptoms. In the end, although some evidence arguably supports a finding of some concentration-related issues, it is her burden to prove her RFC, see Stormo, 377 F.3d at 806, and she has not overcome that burden when viewed in the context of the entire record. The Court must reject Plaintiff's arguments.[7]

## IV. Conclusion

For all of the foregoing reasons, Plaintiff's arguments that the ALJ erred are unavailing. The ALJ thoroughly evaluated the evidence in this case, cogently articulated her reasons for finding Plaintiff not to be disabled, and gave Plaintiff a full and fair hearing. The ALJ's conclusions in this matter are therefore supported by substantial evidence.

Accordingly,

**IT IS HEREBY ORDERED** that the decision of the Administrative Law Judge in this matter is **AFFIRMED**, and Plaintiff's Complaint is **DISMISSED, with prejudice**.

/s/ *John M. Bodenhausen*
UNITED STATES MAGISTRATE JUDGE

Dated this 12th day of September, 2016

---

[7] Finally, Plaintiff points to a letter from her former supervisor, Eyvonne Emily ("Emily"), in which Emily said that Plaintiff's "cognitive abilities were beginning to be impaired." (Tr. 303) Plaintiff claims that this evidence supports her argument that her fibromyalgia and medication side effects caused limitations in concentration, persistence or pace. The ALJ acknowledged this evidence, (Tr. 24), but held that it did not alter the overall conclusion. Given the evidence discussed above, including the medical evidence, Plaintiff's discounted credibility, and her inconsistent statements, the Court cannot say that this decision is improper. The ALJ's RFC is supported by substantial evidence.